IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BARRY L. BALL,

                Petitioner,           REPORT AND
                                                          RECOMMENDATION

     v.

                                                             07-cv-0670-bbc

RICHARD J. RAEMISCH, Secretary of the
Wisconsin Department of Corrections,

                Respondent.

---

## REPORT

Petitioner Barry Ball, an inmate at the Columbia Correctional Institution, has filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The subject of the petition is a prison disciplinary decision finding petitioner guilty of violating Wis. Admin. Code DOC §§ 303.12 (battery) and 303.15 (sexual conduct) while incarcerated. Petitioner contends that he is entitled to federal habeas relief because prison officials denied him meaningful opportunity to defend against the charges against him in violation of his right to fundamental due process. Petitioner alleges that the inmate conduct report relied on information from confidential informants and did not identify the date, time or location of his alleged misconduct. Respondent acknowledges that this petition is filed timely and that petitioner exhausted his state court remedies as to the claims in his petition. Because I agree with respondent that the state court of appeals' decision on the merits of petitioner's claims was not contrary to or an

unreasonable application of federal law and was based on a reasonable determination of the facts, I am recommending that this court deny the petition.

From the petition, state circuit court and appellate court decisions and the record of the disciplinary proceedings submitted by the parties, I find the following facts:

FACTS

On April 27, 2004, prison officials at Oshkosh Correctional Institution issued petitioner a conduct report charging him with sexual conduct and battery in violation of Wis. Admin. Code DOC §§ 303.12 and 303.15. Dkt. 11, Exh. 5 at 13.[1] The charges were based on information provided by five confidential informants that petitioner had paid his cellmate, Shawn Weaver, with canteen items to perform oral sex on multiple occasions, hit Weaver in the face hard enough to leave a red mark and made sexual overtures toward two other inmates. The conduct report did not specify the dates on which the offenses had occurred or identify the other two victims. Dkt. 11, Exh. 5 at 13-14 and Exh. 15 at ¶ 2. Each of the informants' statements were typed onto a DOC-78 form and signed under oath before a witness. Only two of the statements were notarized. All five of the informants stated that they feared retaliation if their identities were revealed, and one informant specifically stated that Weaver was afraid to tell staff because

---

[1] In the court's electronic filing system (CM-ECF), the state's response to the petition and its attachments, dkt. 11, is divided into 22 parts. Because the main document is designated as "part 1," the 21 exhibits are assigned part numbers that are one higher than the attachment numbers provided by the respondent. In this order, I will cite to the exhibit number provided by respondent.

petitioner had threatened him.  Petitioner was provided with a summary of the informants' statements.  Dkt. 11, Exh. 5 at 12 and Exh. 15 at ¶ 3.

Petitioner submitted a written statement dated April 29, 2004 to the adjustment committee in which he denied engaging in sexual activity with Weaver or any other inmate and denied hitting Weaver in the face.  Petitioner summarized the contents of the confidential informant statements in his statement.  Dkt. 11, Exh. 4 at 7-13.

On May 10, 2004, the prison adjustment committee found petitioner guilty of both offenses.  Dkt. 11, Exh. 5 at 18 and Exh. 15 at ¶ 4.  In documents dated May 10 and August 18, 2004, the committee issued written reasons for its decision and the evidence it relied on, including the following:

> [T]he committee notes the accused did not provide any witnesses to support his testimony.  The accused merely denied any involvement or knowledge of the conduct detailed in the report.  The committee reviewed the confidential informant statements and accepts the statements in lieu of personal testimony for the personal safety of the informants.  The committee further finds the confidential informant statements to be credible, as the statements are similar in context and support the allegations of this report.  The committee further notes that the confidential informant statements are signed and notarized under oath in accordance with 303.81(5).  The confidential informant statements clearly identify the accused and give detailed accounts of his sexual acting out.  Several of the statements also state that they witnessed another inmate with a red mark on his face consistent with being hit.  Based on the fact that the confidential informant statements are so close in their context and consistency and the accused could offer no defense other than to deny the allegations the committee believes it more likely than not that the accused did engage in sexual conduct and did batter another inmate. . .

Dkt. 11, Exh. 5 at 17-18.  Petitioner was sanctioned with 8 days of adjustment segregation and 360 days of program segregation, resulting in a loss of good time and a transfer to another

institution. Dkt. 1 at 3; dkt. 11 at 3. He sought administrative relief and then certiorari review in the Circuit Court for Dane County.

On May 24, 2005, the circuit court dismissed his petition with prejudice, finding that prison officials did not violate petitioner's due process rights by not revealing to petitioner the specific dates and times of the incidents and the identities of the individuals involved. Relying on *McCollum v. Miller* (*McCollum I*), 695 F.2d 1044 (7th Cir. 1982), the court held that identifying information could be kept confidential when revealing this information would compromise the informants' safety, provided that other safeguards are in place to ensure reliability and protect the accused from error. Dkt. 11, Exh. 10 at 3-4.

The circuit court noted that pursuant to Wis. Admin. Code DOC §§ 303.66(2) and 303.81(5), the conduct report specified the sections of the administrative code that petitioner allegedly violated and summarized the five informant statements upon which the charges were based. The court further noted that the specifics of the case limited when and where the offenses could have occurred: petitioner knew that one of the alleged victims was Weaver, who was his cellmate for only 60 days. The circuit court also concluded from petitioner's lengthy, written statement to the adjustment committee that he was well aware of the charges against him. As a result, the court found that petitioner received sufficient notice and reasons for the charges against him. Dkt. 11, Exh. 10 at 3-4.

Following an *in camera* review of the confidential informant statements, the circuit court found that they were properly signed and notorized under oath and corroborated one another. Wis. Admin. Code DOC § 303.86(4) (confidential witness statement admissible if signed under

4

oath and corroborated by at least one other anonymous statement). The court also found that the statements had been summarized fairly for petitioner. The circuit court held that the procedures set forth in Wis. Admin. Code DOC § 303.86(4) satisfied the requirement that a disciplinary committee must find confidential statements and informants reliable in order to rely on them. *McCollum v. Williford* (*McCollum II*), 793 F.2d 903, 905 (7th Cir. 1986); *Mendoza v. Miller*, 779 F.2d 1287, 1293 (7th Cir. 1985) (reliability of informant statements can be established by corroborating testimony). Noting that the adjustment committee listed a number of reasons for finding the statements credible and for keeping them confidential, the circuit court determined that it was reasonable for the committee to rely on them. The court also noted that the petitioner's alleged conduct and threats toward the witnesses supported the committee's conclusion that testifying could jeopardize the witnesses' personal safety. Dkt. 11, Exh. 10 at 6-7.

Petitioner appealed, and the Wisconsin Court of Appeals affirmed the circuit court's decision on February 23, 2006. Recognizing that it is permissible in certain circumstances to omit information about charged offenses in order to protect confidential informants and maintain institutional security, the appellate court found that the conduct report gave petitioner sufficient notice to satisfy due process:

> Here, the conduct report "described the facts in detail" by summarizing all of the allegations made by the confidential informants. While the time period was not specified, it was nonetheless limited by the undisputed fact that the primary victim had only been Ball's cellmate for a period of about sixty days. Moreover, because the primary allegation was of an ongoing sexual relationship between cellmates, the times and places of individual incidents was not essential. This is not a situation where Ball could realistically have defended against either the

5

> sexual conduct or battery charge by showing that he was housed in a different section of the prison and had no opportunity to engage in the alleged conduct. Rather, the case turned on whether the committee found Ball's denials credible. The failure to identify the other two inmates to whom Ball had allegedly made sexual overtures would be more troubling if Ball were charged with additional counts relating to them. However, because Ball was charged with only one sexual conduct count relating to his cellmate, and the other alleged incidents were only used as corroborating statements, we conclude the conduct report gave Ball sufficiently specific notice to satisfy due process.

Dkt. 11, Exh. 15 at ¶¶ 6-7 (citing *McCollum I*, 695 F.2d at 1048; *State ex rel. Clarke v. Carballo*, 83 Wis. 2d 349, 356 n.4 265 N.W.2d 285 (1978)).

Petitioner subsequently filed a petition for review, which the Wisconsin Supreme Court denied on August 31, 2006. Dkt. 11, Exh. 20.

## ANALYSIS

### I. Legal Framework

This court's ability to grant habeas relief is limited by 28 U.S.C. § 2254(d):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

When applying this statute, a federal court reviews the decision of the last state court that ruled on the merits of petitioner's claims, *Simelton v. Frank*, 446 F.3d 666, 669 (7th Cir. 2006), which in this case is the Wisconsin Court of Appeals. A decision is "contrary to" federal law when the state court applies a rule that "contradicts the governing law set forth by the Supreme Court," or when an issue before the state court "involves a set of facts materially indistinguishable from a Supreme Court case," but the state court rules in a different way. *Boss v. Pierce*, 263 F.3d 734, 739 (7th Cir. 2001) (*citing Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). "'A state-court decision that correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular petitioner's case' qualifies as a decision involving an unreasonable application of clearly established federal law." *Id.* (*quoting Williams*, 529 U.S. at 407-08). An "unreasonable" state court decision is one that is "well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002).

A state court determination is not unreasonable if the court "takes the rule seriously and produces an answer within the range of defensible positions." *Mendiola v. Schomig*, 224 F.3d 589, 591 (7th Cir. 2000). *See also Lindh v. Murphy*, 96 F.3d 856, 871 (7th Cir. 1996) ("[W]hen the constitutional question is a matter of degree, rather than of concrete entitlements, a 'reasonable' decision by the state court must be honored."), *rev'd on other grounds*, 521 U.S. 320 (1997). The reasonableness inquiry focuses on the outcome and not the reasoning provided by the state court. *Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir. 1997). A decision that is at least minimally consistent with the facts and circumstances of the case is not unreasonable. *Henderson v. Walls*, 296 F.3d 541, 545 (7th Cir. 2002). Under § 2254(e)(1), the state court's findings of

7

fact are presumed correct, and it is the petitioner's burden to show by clear and convincing evidence that the state court's factual determinations were incorrect. *See Harding v. Walls*, 300 F.3d 824, 828 (7th Cir. 2002).

## II. Due Process Claim

Petitioner contends that the disciplinary committee denied him his due process right to defend the charges against him because he was not given the specific time and location of his alleged misconduct or the identity of the confidential informants. Where a prison disciplinary hearing may result in the loss of good time credits, as in petitioner's case, the Supreme Court has held that the minimum requirements of procedural due process require that the inmate receive: "1) advance written notice of the disciplinary charges; 2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and 3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974)); *see also Sandin v. Conner*, 515 U.S. 472, 477-78 (1995) (citing same). However, these rights are circumscribed. "[I]n identifying the safeguards required by due process, the Court has recognized the legitimate institutional needs of assuring the safety of inmates and prisoners, avoiding burdensome administrative requirements that might be susceptible to manipulation, and preserving the disciplinary process as a means of rehabilitation." *Superintendent*, 472 U.S. at 454-55.

Consequently, an inmate facing disciplinary proceedings does not have the right to confront or cross examine witnesses against him, prison officials may deny an inmate the right to call witnesses and present documentary evidence if granting the request would be "unduly hazardous to institutional safety or correctional goals," and the disciplinary committee may exclude certain evidence from the written statement documenting their decision provided that the statement indicate "the fact of the omission." *Wolff*, 418 U.S. at 565-67; *White v. Indiana Parole Board*, 266 F.3d 759, 767-68 (7th Cir. 2001); *Henderson v. U.S. Parole Comm'n*, 13 F.3d 1073, 1078 (7th Cir. 1994). Similarly, when a disciplinary committee relies on evidence from confidential informants, institutional safety and an efficient disciplinary system are predominant concerns because revealing the informants' names could lead to death or serious injury for the informants. *Mendoza v. Miller*, 779 F.2d 1287, 1293 (7th Cir. 1985) (citing *McCollum I*, 695 F.2d at 1048).

Although the findings of the disciplinary committee must be "supported by some evidence in the record," *Superintendent*, 472 U.S. at 454, prison officials are given broad discretion when balancing an inmate's due process interests against interests in institutional safety and an efficient disciplinary system, *Mendoza,* 779 F.2d at 1293-94. The Court has cautioned courts reviewing a disciplinary decision to "not be too ready to exercise oversight and put aside the judgment of prison administrators." *Wolff*, 418 U.S. at 566.

Although it did not mention *Wolff*, the Wisconsin Court of Appeals applied the appropriate legal standard as set forth in *McCollum I,* 695 F.2d at 1048 (to decide whether due process violated, must weigh costs and benefits of procedural safeguards, bearing in mind

9

probability of error and potential cost of error to defendant).  *See Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (*per curiam*) (state court need not cite or even be aware of Supreme Court precedent as long as state court decision does not contradict it).  The court of appeals correctly recognized that inmates do not have a due process right to be informed of the identity of the confidential informants and the decision whether to reveal their identities is committed to the sound discretion of prison authorities.  *Mendoza*, 779 F.2d 1294.

Petitioner also cites *McCollum I*, but in support his assertion that the date, time and place of the alleged incidents were essential to the preparation of his defense.  695 F.2d at 1048 (essential information inmate needed to prepare defense was time and place of each act of extortion). *McCollum I* involved four inmates who were brought up on disciplinary charges based on a report that an investigator prepared after interviewing confidential informants. *Id.* at 1048-49; *McCollum II*, 793 F.2d at 904.  The inmate defendants were not given the dates, times or places of the alleged incidents.  *Id.*  The disciplinary committee found the inmates guilty, generally noting that information received from confidential sources had in the past proven reliable.  *Id.*  Neither the investigator nor the informants testified and the investigative report was not submitted under oath.  *Id.*  The court remanded so prison officials could testify about what feasible safeguards could be implemented to insure due process.  *McCollum I,* 695 F.2d at 1048-49; *McCollum II*, 793 F.2d at 905 and 907.  In *McCollum II,* the court of appeals found that the following procedures would have insured due process for the inmates facing disciplinary charges based on information supplied by confidential informants in *McCollum I*:  information must be from more than one confidential source or otherwise corroborated, the informant(s)

10

must be determined reliable, confidential information must be presented to the disciplinary committee in writing, the identity of the informant(s) must be known at least by the chairman of the committee, the confidential statements must be incorporated by reference into the committee's decision and the committee must document its findings regarding the reliability of the informant(s). 793 F.2d at 907-08 and 909 n. 3. The facts in the instant case are much different than in *McCollum I* and show that sufficient safeguards were in place to protect petitioner's due process rights.

Both the circuit court and appellate court noted that the identity of the informants and information that potentially could reveal their identities (the date, time and location of the incidents) was properly withheld to protect the witnesses' safety and institutional security. After reviewing the confidential statements *ex parte* and *in camera,* I find that it was reasonable for the state courts to conclude that the informants faced a real and substantial threat of retaliation from petitioner if their identities were to become known. All of the informants specifically stated that they feared retaliation from petitioner, and one specifically noted that petitioner threatened Weaver if he told prison officials. Prison officials had good reason to fear for the informants' safety and the institution's security.

Although the conduct report in petitioner's case did not specify the time period and location of the incidents, it fairly apprised him of the charges. Petitioner also was provided with a summary of the confidential statements. My review of the confidential statements shows that these documents accurately summarized the allegations made by the confidential informants. As noted by the court of appeals, petitioner's statement to the adjustment committee shows that

11

he knew that Weaver was the alleged victim and the details of the alleged incidents. Dkt. 11, Exh. 4 at 7-13. Further, the court of appeals found that it was undisputed that Weaver (the primary victim) had been petitioner's cellmate only for a period of about sixty days, a fact that narrows the possible time period during which the incidents could have taken place. Petitioner disputes this fact, arguing that neither the conduct report or the summary of confidential statements state that sexual acts took place while Weaver was his cellmate. Dkt. 10 at 2. However, the conduct report states that petitioner had been engaged in a long-term sexual relationship with Weaver, dkt. 11, Exh. 5 at 13, and the court of appeals determined that because petitioner knew this, the times and places of individual incidents were not essential to his defense. It was reasonable for the court to conclude that petitioner could not have defended against either the sexual conduct or battery charge by showing that he was housed in a different section of the prison and had no opportunity to engage in the alleged conduct.

The appellate court did express concern over the fact that the committee failed to identify the other two inmates to whom petitioner had allegedly made sexual overtures. However, it determined, and I agree, that this would have been more troubling if petitioner had been charged with additional counts relating to those witnesses. However, because petitioner was charged with only one sexual conduct count relating to his cellmate and the other alleged incidents were only used as corroborating statements, the court reasonably concluded that the conduct report gave petitioner sufficient notice to satisfy due process.

As indicated above, the Seventh Circuit requires some indication that the confidential information is reliable. *Mendoza*, 779 F.2d at 1293 (citing *Dawson v. Smith*, 719 F.2d 896, 899

(7th Cir. 1983)). There are four ways to establish this: 1) by oath of the investigating officer as to the truth of the officer's report containing confidential information and the officer's appearance before the disciplinary committee; 2) corroborating testimony; 3) a statement on the record by the chairman of the disciplinary committee that he or she had firsthand knowledge of the sources of information and considered them reliable on the basis of their past record of reliability; or 4) *in camera* review of material documenting the investigator's assessment of the credibility of the confidential informant. *Henderson*, 13 F.3d at 1078 (citing *Mendoza,* 779 F.2d at 1293). Further, the reasons for keeping a witness's identity confidential or for finding his or her statement to be reliable does not have to be made available to the inmate. *McKinney v. Meese*, 831 F.3d 728, 731 (7th Cir. 1987) (citations omitted). Instead the reviewing court may satisfy itself of the informant's reliability by examining the material *in camera*. *Id.*

The circuit court conducted an *in camera* review of the confidential statements and determined that they were reliable. After carefully reviewing the material before the disciplinary committee, I also find that the statements possess sufficient indicia of reliability. More than one witness corroborated the sexual assault and battery, all of the witnesses identified themselves by name in their sworn statements and all stated that they feared retaliation by petitioner if their names became known. *See Wells v. Israel*, 854 F.2d 995, 1000 (7th Cir. 1987) (using same criteria in finding confidential material reliable). Further, as noted by the court of appeals, the adjustment committee had the actual signed statements before it and found them to be credible. Dkt. 11, Exh. 15 at ¶ 8.

In sum, their were legitimate interests in safety and security to justify keeping the informants and the date, time and location of the incidents confidential. These concerns outweighed the need for petitioner to be made aware of this information given the reliability of the informant statements and other safeguards in place to protect petitioner's right to fundamental due process. Accordingly, the state courts reasonably applied federal law. I am recommending that the court deny the petition.

## RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1)(B) and for the reasons stated above, I recommend that this court deny the petition of Barry Ball for a writ of habeas corpus and dismiss this case.

Entered this 30th day of April, 2008.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN
120 N. Henry Street, Rm. 540
Post Office Box 591
Madison, Wisconsin 53701

Chambers of                                                                                                                                                                             Telephone
STEPHEN L. CROCKER                                                                                                                                                   (608) 264-5153
U.S. Magistrate Judge

May 1, 2008

Barry L. Ball
119788-A
P.O. Box 900
Portage, WI 53901-0950

William L. Gansner
Wisconsin Department of Justice
P.O. Box 7857
Madison, WI 53701-7857

      Re:    Ball v. Raemisch
             Case No. 07-cv-670-bbc

Dear Mr. Ball and Attorney Gansner:

      The attached Report and Recommendation has been filed with the court by the United States Magistrate Judge.

      The court will delay consideration of the Report in order to give the parties an opportunity to comment on the magistrate judge's recommendations.

      In accordance with the provisions set forth in the newly-updated memorandum of the Clerk of Court for this district which is also enclosed, objections to any portion of the report may be raised by either party on or before May 19, 2008, by filing a memorandum with the court with a copy to opposing counsel.

      If no memorandum is received by May 19, 2008, the court will proceed to consider the magistrate judge's Report and Recommendation.

                                                          Sincerely,

/s/

Connie A. Korth
Secretary to Magistrate Judge Crocker

Enclosures
cc:     Honorable Barbara B. Crabb, District Judge

MEMORANDUM REGARDING REPORTS AND RECOMMENDATIONS

Pursuant to 28 U.S.C. § 636(b), the district judges of this court have designated the full-time magistrate judge to submit to them proposed findings of fact and recommendations for disposition by the district judges of motions seeking:

        (1) injunctive relief;

        (2) judgment on the pleadings;

        (3) summary judgment;

        (4) to dismiss or quash an indictment or information;

        (5) to suppress evidence in a criminal case;

        (6) to dismiss or to permit maintenance of a class action;

        (7) to dismiss for failure to state a claim upon which relief can be granted;

        (8) to dismiss actions involuntarily; and

        (9) applications for post-trial relief made by individuals convicted of criminal offenses.

Pursuant to § 636(b)(1)(B) and (C), the magistrate judge will conduct any necessary hearings and will file and serve a report and recommendation setting forth his proposed findings of fact and recommended disposition of each motion.

Any party may object to the magistrate judge's findings of fact and recommended disposition by filing and serving written objections not later than the date specified by the court in the report and recommendation. Any written objection must identify specifically all proposed findings of fact and all proposed conclusions of law to which the party objects and must set forth

with particularity the bases for these objections. An objecting party shall serve and file a copy of the transcript of those portions of any evidentiary hearing relevant to the proposed findings or conclusions to which that party is objection. Upon a party's showing of good cause, the district judge or magistrate judge may extend the deadline for filing and serving objections.

After the time to object has passed, the clerk of court shall transmit to the district judge the magistrate judge's report and recommendation along with any objections to it.

The district judge shall review de novo those portions of the report and recommendation to which a party objects. The district judge, in his or her discretion, may review portions of the report and recommendation to which there is no objection. The district judge may accept, reject or modify, in whole or in part, the magistrate judge's proposed findings and conclusions. The district judge, in his or her discretion, may conduct a hearing, receive additional evidence, recall witnesses, recommit the matter to the magistrate judge, or make a determination based on the record developed before the magistrate judge.

**NOTE WELL: A party's failure to file timely, specific objections to the magistrate's proposed findings of fact and conclusions of law constitutes waiver of that party's right to appeal to the United States Court of Appeals.** *See United States v. Hall,* 462 F.3d 684, 688 (7th Cir. 2006).